UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------X

GREGORY MESSER, as Chapter 7 Trustee of
Fine Diamonds, LLC,

               Plaintiff,

   - against -

PEYKAR INTERNATIONAL CO., INC., MITCH
PEYKAR, AND MEHRAN PEYKAR,

              Defendants.

--------------------------------------X

In re:

FINE DIAMONDS, LLC,

            Debtor.

--------------------------------------X

13 Civ. 8195 (RWS)

O P I N I O N

Adversary
Proceeding
No. 09-1033 (REG)

Chapter 7
Case No.
09-10492(REG)

A P P E A R A N C E S:

**ATTORNEYS FOR PLAINTIFF CHAPTER 7 TRUSTEE GREGORY MESSER**

WILK AUSLANDER LLP
1515 Broadway, 43rd Floor
New York, NY 10036
By:  Eric J. Snyder, Esq.
     Jessica Taran, Esq.

**PRO SE DEFENDANTS**

MITCH PEYKAR
144-50 69 Road
Flushing, NY 11367

MEHRAN PEYKAR
69-66 180 Street
Fresh Meadow, NY 11365

**Sweet, D.J.**

Plaintiff Gregor Messer ("Plaintiff" or "Trustee"),
the Chapter 7 Trustee of Fine Diamonds, LLC, the debtor ("Fine
Diamonds" or "Debtor") moves for an order (i) adopting the
findings of fact and conclusions of law (the "Proposed
Findings") set forth in the Decision after Trial of the
Honorable Judge Gerber, dated October 11, 2013, *In re Fine
Diamonds, LLC*, 501 B.R. 159 (Bankr. S.D.N.Y. 2013) (the
"Decision"), pursuant to 28 U.S.C. § 157(c), Bankruptcy Rule
8011, Local Rule 9033-1 of the Unites States Bankruptcy Court
for the Southern District of New York ("SDNY Rule 9033-1"), the
District Court's Amended Standing Order of Reference re: Title
11, dated January 31, 2012 (Preska, C.J.) (the "Standing Order")
and the order of the Honorable United States Bankruptcy Court
Judge Robert E. Gerber, dated November 18, 2013; (ii) directing
the Clerk of the Court to enter a money judgment in the amount
of $37,593,930.34, plus pre-judgment interest at 9% from
December 7, 2008 through the date of the judgment; (iii)
dismissing the appeals of the Decision filed by defendants Mitch
Peykar ("Mitch") and Mehran Peykar ("Mehran") (collectively, the
"Peykars," together with Peykar International Co., Inc.
("Peykar" or "Peykar International"), collectively, the
"Defendants"); and (iv) for such other and further relief as the

2

Court deems just and proper.  Based on the reasoning below,
Plaintiff's motions are granted.

## Prior Proceedings

The non-core action is related to an involuntary
chapter 7 bankruptcy petition against the Debtor initiated on
February 4, 2009 by creditor Nedbank Ltd. ("Nedbank").  *In re*
*Fine Diamonds*, 501 B.R. at 174.  Nedbank is a bank that is owed
more than $10 million by the Debtor.  The same day, Nedbank,
among other things, moved for the immediate appointment of an
interim chapter 7 trustee, and filed the underlying adversary
proceeding (the "Adversary Proceeding"), seeking to recover, on
behalf of the Debtor, "over $36 million" of diamonds (the
"Transferred Diamonds") allegedly converted or embezzled from
the Debtor.  *Id.*  The Trustee was appointed under Section 303(g)
of the Bankruptcy Code on February 6, 2009.

On July 24, 2009, the Trustee filed an Amended
Complaint substituting himself as Plaintiff in the Adversary
Proceeding.  The Amended Complaint sought relief on four
separate grounds: turnover, under Section 542 of the Bankruptcy
Code; fraudulent transfer doctrine; conversion; and fraudulent
misrepresentation.  *Id.* at 176.

3

The trial on the Adversary Proceeding was held on
March 17 and 18, 2011 (the "Trial").  On October 11, 2013, the
Bankruptcy Court entered the Decision, a 43-page long opinion in
which the Bankruptcy Court entered judgment in favor of the
Trustee and against the Defendants, jointly and severally, in
the amount of $37,593,930.34, plus pre-judgment interest at 9%
from December 7, 2008 through the date of the judgment.  In the
Decision, the Bankruptcy Court concluded that it possessed the
constitutional authority to enter final decisions only with
respect to certain claims (the two fraudulent conveyance claims
and the turnover claim), but did not have the requisite
authority to enter a final decision regarding the conversion
claim.  *Id.* at 164 n.3.  Rather than sever the claims, the
Bankruptcy Court deferred entry of judgment on the claims with
respect to which it has the constitutional power to enter final
judgment in order to permit the District Court to: (i) entertain
any objections to the Decision; (ii) make a final determination
regarding findings of facts and conclusions of law regarding all
of the claims; and (iii) enter a judgment against the
Defendants.  *Id.*

In an order ("Implementation Order I") entered by the
Bankruptcy Court simultaneously with the Decision (Case No. 09-

4

01033, ECF No. 109), the Bankruptcy Court gave the Defendants 28 days to interpose any objections to the Decision.  The Defendants were served with copies of the Decision on or about October 16, 2013 (*see id.*, ECF No. 111), and the Defendants were required to interpose objections to the decision on or before November 14, 2013.

No objections were filed by any of the Defendants within that deadline in accordance with Bankruptcy Rule 9033 and 28 U.S.C. § 157.  The Peykars did file notices of appeal of the Decision on October 23, 2013.  (*Id.*, ECF Nos. 112 and 114).  On November 6, 2013, the Peykars filed the designations docked as "Designation of Contents and Statements of Issues" (the "Designations") (*Id.*, ECF Nos. 116 and 117).  However, none of the Defendants interposed any objections to the Decision.

The Bankruptcy Court then entered an order ("Implementation Order II") directing the Bankruptcy Court clerk to transfer the record to the District Court and to request that a case be opened to allow the District Court to take the necessary action to implement the Decision.

Plaintiff filed the instant motion on November 26, 2013.  On November 27, 2013, the Peykars each filed a "Motion to

5

Correct Error" in the instant action, requesting that
Designations be considered as objections to the Proposed
Findings.  The matter was marked fully submitted on December 11,
2013.

## Findings Of Fact In The Decision

The findings of fact made by the Bankruptcy Court
after the Trial is set forth in detail in the Decision.  Only
the salient facts are set forth below.

The Debtor was a New York limited liability company
owned by Lester Meents ("Lester") and Jeffrey Meents
("Jeffrey").  Doran Meents ("Doran"), Jeffrey's son, was the
sole employee of the Debtor.  *Id.* at 165.  The Debtor sold
finished diamonds to wholesalers and retail outlets in
Manhattan.  *Id.*  Louis Meents, Jeffrey's father and Doran's
grandfather, started Festdiam Diamond Cutting Works
("Festdiam"), a South African privately held company, in the
early 1960s.  Festdiam is owned by Jeffrey and Lester and
supplied the Debtor with finished diamonds.  *Id.*

Between 2003 and 2006, Doran's business with the
Peykars was limited and involved traditional purchase and sale

6

transactions, with credit extended.  *Id.* at 166.  At the end of
2006, Mehran asked if Doran would agree to consign diamonds to
him "on memo," as was often done in the diamond business.  *Id.*
Beginning in early 2007, Doran began providing diamonds to the
Peykars on consignment.  *Id.*

From approximately April 2007 continuing through the
end of 2008, virtually all of the sales and distribution of the
Debtor's diamonds flowed through Peykar, Mitch and Mehran.
Peykar became the principal distributor and broker of diamonds
for Fine Diamonds.  *Id.* at 167.  The Peykars would sell the
diamonds to customers and remit payment back to the Debtor.  *Id.*

The Debtor delivered numerous diamonds to Peykar in
the period from April 1, 2007 through November 2008 reflected on
spreadsheets maintained in the ordinary course of the Debtor's
business.  *Id.*  Each of the spreadsheets reflected specific
diamonds that Doran delivered to either Mitch or Mehran, along
with the cumulative price for each batch that Peykar agreed to
pay Fine Diamonds.  *Id.*  The spreadsheets contained line items
for each stone, listing the weight (by carat), color, clarity,
and other physical characteristics.  In addition, there was a
listing for the "Rappaport" price (which is a trade publication
that lists the values of diamonds), along with a discount for

7

the particular transaction and a price for each stone that had been agreed upon between Doran and one or both of the Peykars. *Id.*

Doran made contemporaneous handwritten notes of any payments he received from Peykar with respect to each batch of the Debtor's diamonds that had been delivered to Mitch or Mehran. *Id.* On the bottom right of most of the spreadsheets was a date indicating the date that the spreadsheet was prepared. The diamonds were delivered to Peykar International on that date or shortly thereafter. *Id.*

During the early part of 2008, the amount owed to Fine Diamonds by Peykar began to increase, eventually exceeding $37 million by the end of the summer. *In re Fine Diamonds*, 501 B.R. at 168. In September 2008, Doran noticed that the payments from Peykar International were slowing down. Doran expressed his concern on numerous occasions to Mitch and Mehran that the Peykars were holding a large amount of Fine Diamonds' property while the money was coming in at a much slower pace. Doran was told by Mitch and Mehran that the diamonds were being kept safely under their control, locked in safes and available at all times either in New York or Tel Aviv. *Id.*

8

Doran, Lester and Lester's daughter confronted Mehran about the diamonds on December 7, 2008 at the Tel Aviv Diamond Exchange, where Mehran's office was located. *Id.* at 171. When they did so, Mehran immediately told them that he was holding $47 million of diamonds. *Id.* Mehran then produced a few boxes, trays, and parcels of loose diamonds which he acknowledged belonged to Fine Diamonds, and which he said were being returned as credit for what was owed by the Peykars to Fine Diamonds. *Id.* Mehran also claimed that some diamonds had been given to a broker in the United States to sell to customers there. But Mehran could provide no name for the broker, nor any documentation for this alleged transfer. *Id.* Mehran reiterated that $6 million in diamonds had been shipped to Fine Diamonds in New York two days prior, but he could produce no documentation to support this either. *Id.* Mehran claimed that the remainder of Fine Diamonds' diamond stock was in sealed cachet boxes being held in a safe in the basement of the building. *Id.*

The following morning, the cachets were opened revealing that the cachets maintained by Mehran were empty, except for one box. *In re Fine Diamonds*, 501 B.R. at 172. In fact, 85 to 90% of the parcels (small envelopes which would normally contain one diamond each) were completely empty, and those parcels that did contain diamonds were immediately

9

identifiable as diamonds that had been swapped out, because they did not correspond to the value of the diamond listing on the face of the box.  *Id.*  After inspecting these diamonds, Lester established that these were diamonds of inferior quality having little value.  *Id.*

On December 9, 2008, Lester had a phone conversation with Mehran that he recorded using a service available in Israel.  *Id.* at 173.  In this conversation, Mehran did not dispute that Peykar owed money to Fine Diamonds.  *Id.*  Mehran disputed only the amount owed, claiming that the amount was approximately $23 million, rather than the approximately $37 million shown as outstanding in Doran's records.  *Id.*  On the same day, Doran went to Mitch's New York office with Doran's father Jeffrey.  *Id.*  Doran brought a digital audio recording device with him to the meeting, which he used to record the entire exchange.  Doran also brought with him the chart that he had sent to Mehran on December 5, listing the batches of diamonds delivered and the payments received.  *Id.*

Mitch acknowledged on several occasions owing money to Fine Diamonds, but he never agreed on the amount.  *Id.*  Mitch claimed that the amount was between $15 and $18 million.  *Id.*

10

When subsequent attempts by Lester to meet with Mehran proved fruitless, Lester contacted the Fraud Department of the Israeli police in Tel Aviv and filed a formal complaint. *Id.* at 174. On Sunday, December 14, 2008, Mehran was arrested in Israel, and his home and office were searched by the Israeli police, on suspicion of grand larceny. *Id.* The Israeli police confirmed that there was no additional safe at Mehran's office in Tel Aviv. *Id.*

The Decision made several conclusions with regards to Debtor's claims, including:

- Claim for turnover pursuant to 11 U.S.C. § 542:
  The Bankruptcy Court found, "as a fact or mixed question of fact and law, that the diamonds given by the debtor to Peykar beginning in 2007 were entrusted to Peykar on consignment, and were not sold on credit." *In re Fine Diamonds*, 501 B.R. at 180. Accordingly, the Bankruptcy Court concluded that "title did not pass to the Peykars during these consignment transactions, and the Transferred Diamonds remained property of the estate, subject to the turnover provision, section 542." *Id.* The Decision further found that "[w]ith no basis for a finding that Peykar International can return those diamonds in kind, judgment must be entered against Peykar International in that amount." *Id.*

- Claim for fraudulent transfer pursuant to 11 U.S.C. § 548:
  The Decision found that "Peykar [] caused the missing diamonds to be transferred to itself, and for no consideration" and that "the transfers were made when [the Debtor] was insolvent, or rendered it so." *Id.* The Bankruptcy Court imposed fraudulent transfer liability on Peykar, but not on Mitch and Mehran. *Id.* at 181-82.

11

- Claim for fraudulent transfer pursuant to 11 U.S.C. § 544
  and § 273 of the New York Debtor and Creditor Law:
  The Bankruptcy Court found that the transfers to Peykar
  International were fraudulent and must be voided under New
  York Debtor and Creditor Law § 273, made applicable by 11
  U.S.C. § 544, because they were made "without [] fair
  consideration" and Defendants failed to show any evidence
  of the Debtor's solvency at the time of the transfer. *Id.*
  at 182.

- Claim pursuant to 11 U.S.C. § 550:
  The Decision found that, given that the courts lack the
  ability to achieve the return of the Transferred Diamonds
  themselves, a money judgment for the value of the diamonds
  in the amount of $37,593,930.34 is appropriate against
  Peykar but not against Mitch and Mehran. *Id.*

- Claim for conversion:
  The Bankruptcy Court found that "Peykar International is
  plainly liable for conversion of the Transferred Diamonds."
  *Id.* at 184.  The Bankruptcy Court further found that Mitch
  and Mehran, as the principals and sole shareholders of the
  debtor, are also liable for conversion because (i) they
  knew of it but failed to "set it right" and (ii) were the
  direct beneficiaries of the conversion.  *Id.*

- Claim for fraudulent misrepresentation:
  The Decision found that the Trustee "did not meet his
  burden of proof on the extent to which Mitch or Mehran made
  any false representations before Doran gave Peykar [] more
  diamonds, and that either made false statements upon which
  Doran or anyone else at [the Debtor] relied." *Id.* at 186-
  87.

- Pre-Judgment Interest:
  The Decision concluded that the Trustee is entitled to pre-
  judgment interest on its conversion claim, at a statutory
  rate of 9% per annum in accordance with N.Y. C.P.L.R. §
  5004, beginning from December 7, 2008, which is the date on
  which Doran and Lester first demanded return of the
  Transferred Diamonds. *Id.* at 187-88.

**Discussion**

12

*The Applicable Standards*

Plaintiff seeks relief pursuant to 28 U.S.C. § 157(c), Bankruptcy Rules 8011 and 9033, and SDNY Rule 9033-1, and the Standing Order.

28 U.S.C. §157(c) provides that in non-core proceedings, the Bankruptcy Court:

> shall submit proposed findings of fact and conclusions of law to the district court, and any final order of judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

28 U.S.C. § 157(c).

Rule 9033(d) of the Bankruptcy Rules, in turn, provides:

> The district judge shall make a de novo review upon the record, or after additional evidence, of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions.

Bankruptcy Rule 9033(d)

SDNY Rule 9033-1, provides that:

> If the Court determines that it cannot enter a final
> order or judgment consistent with Article III of the
> United States Constitution in a particular proceeding
> referred to the Court and designated as core under
> section 157(b) of title 28, and the Court hears the
> proceeding, Rule 9033(a), (b), and (c) of the Federal
> Rules of Bankruptcy Procedure shall apply as if it is
> a non-core proceeding.

SDNY Rule 9033-1.

The Standing Order provides, in relevant part, as

follows:

> If a bankruptcy judge or district judge determines
> that entry of a final order or judgment by a
> bankruptcy judge would not be consistent with Article
> III of the United States Constitution in a particular
> proceeding referred under this order and determined to
> be a core matter, the bankruptcy judge shall, unless
> otherwise ordered by the district court, hear the
> proceeding and submit proposed findings of fact and
> conclusions of law to the district court.

*See* Snyder Decl., Ex. B.

14

*Defendants' Failure To Object To The Proposed Findings*
*Waives Their Right To De Novo Review*

Pursuant to Bankruptcy Rule 9033(d), the district
court "shall [only] make a de novo review . . . of any portion
of the bankruptcy judge's findings of fact or conclusion of law
*to which specific written objection has been made in accordance*
*with this rule.*" Bankruptcy Rule 9033(d) (emphasis added).
Similarly, § 157(c) of the Bankruptcy Code mandates de novo
review only of "those matters to which any party has timely and
specifically objected." 28 U.S.C. § 157(c).

Defendants have not filed any objections to the
Proposed Findings either within the time proscribed by
Bankruptcy Rule 9033 and Implementation Order I or otherwise.
Defendants have thus waived their right to object to the
Proposed Findings. *See In re Ionosphere Clubs, Inc.,* No. 94 CIV
0659 (MBM), 1996 WL 361531, at *1 (S.D.N.Y. June 28, 1996)
("failure to comply with the cited Rule in pursuing this appeal
would be sufficient reason for finding that [appellant] has
waived his objections and affirming the order at issue."); *In re*
*Golodetz Corp.*, 198 B.R. 441 (Bankr. S.D.N.Y. 1996) (reasoning
that, pursuant to Bankruptcy Rules 9020(c) and 9033(b), a
potential contemnor has ten days within which to file an

15

objection to the finding of contempt or the right to *de novo* review of the finding by the district court is deemed waived); *Hagan v. Okony,* No. 1:08-cv-732, 2008 WL 4722747, at *1 (W.D. Mich. Oct.22, 2008) (stating that where no party files objections to the bankruptcy court's report and recommendation, it "stand[s] without objection"); *see also Infrastructure Service Co., LLC v. Firestone*, 328 B.R. 804 (C.D. Cal. 2005) (denying plaintiff's motion for relief from a judgment adopting the bankruptcy court's proposed findings where plaintiff failed to file objections to the proposed findings within the time proscribed in Bankruptcy Rule 9033).

In response to Plaintiff's motion, the Peykars each filed a Motion to Correct Error. The Motions to Correct Error each contained six lines requesting that the Designations be considered as objections to the Proposed Findings. No legal authority was provided supporting the Peykars' request, and the Court has not found a case opining on the issue. A motion to correct an error is usually brought pursuant to Fed. R. Civ. Pro. 59(e), or 60(a), but those rules address correcting or amending a judgment or order, whereas the Peykars seek to "correct" their own papers.

While Defendants are now appearing *pro se* in this

16

action, their *pro se* standing does not excuse them from
complying with the Federal Rules of Civil Procedure or the
Bankruptcy Rules.  Pleadings by *pro se* parties are "construed
liberally," but "'*pro se* status does not exempt a party from
compliance with relevant rules of procedural and substantive
law.'"  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477
(2d Cir. 2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d
Cir. 1983)).  A *pro se* party is liable for his failure to timely
object to the bankruptcy court's proposed findings in accordance
with Bankruptcy Rule 9033.  *In re Ionosphere Clubs, Inc.*, No. 94
CIV 0659 (MBM), 1996 WL 361531 (S.D.N.Y. June 28, 1996).
Procedural rules in civil litigation cannot "be interpreted so
as to excuse mistakes by those who proceed without counsel."
*McNeil v. U.S.*, 508 U.S. 106, 113, 113 S. Ct. 1980, 1984 (1993)
(affirming dismissal of *pro se* plaintiff's suit given his
failure to comply with the governing statute).

        Several other factors compel against leniency for the
Peykars' *pro se* status.  Defendants clearly had notice of the
Proposed Findings, since they filed notices of appeal.  The
Peykars also had notice of the instant motion, as they each
filed their Motions to Correct Error in the instant proceeding.
Further, Defendants were represented by counsel throughout the
Adversary Proceeding and are sophisticated parties: they are

international businessmen dealing in millions of dollars worth of goods.

In addition, Bankruptcy Rule 9033(d) and § 157(c) of the Bankruptcy Code call for specificity in any objections. Neither the Peykars' Motion to Correct Error nor Designations contain sufficient specificity to qualify as objections.  Even if the Motions to Correct Error were granted, the Designations do not constitute objections to the Proposed Findings.  The Designations list statements of issues (the "Issues"), but the Issues are mostly bare statements or questions for a court. (See, Case No. 09-01033, ECF Nos. 116 and 117).  The Peykars have not pointed to any specific portions of the Decision to which they object in both the Designations and the Motions to Correct Error nor provided any specificity as to why the factual determinations or legal conclusions are incorrect.  Bare statements that are devoid of any reference to specific findings or recommendations to which a party objects and why, and unsupported by legal authority, are not sufficient to constitute actionable objections.  See, e.g., Mario v. P & C Food Markets, Inc., 313 F.3d 758, 766 (2d Cir. 2002) (finding party who filed bare bones objections to magistrate judge's report and recommendation failed to adequately object under Fed. R. Civ. P. 72(b)); Bowens v. Atlantic Maintenance Corp., 546 F. Supp. 2d

18

55, 59 (E.D.N.Y., April 23, 2008) (holding that defendant's general and conclusory objections to the magistrate's report and recommendations were not specific enough to preserve claims for review and thus the purported objections were waived); *Healing Power, Inc. v. Ace Continental Exports, Ltd.*, 2008 WL 4693246 (E.D.N.Y. October 17, 2008) (rejecting *pro se* defendants' letter to the Court purporting to object to a magistrate's report and recommendations and, upon review for clear error, adopting them in their entirety).[1] The Peykars' Motion to Correct Error and Designations have not made any "timely and specific[]" objections as required under 28 U.S.C. § 157(c) or any "specific written objection[s]" pursuant to Bankruptcy Rule 9033(d), which obviates *de novo* review of the Proposed Findings. *See, e.g., In re Perry H. Koplik & Sons, Inc.*, 499 B.R. 276, 288 n.6 (S.D.N.Y. 2013) ("Because the Bankruptcy Court did not find the Officers to be liable in connection with those transactions, and because no party has raised an objection to those findings, the Court

---

[1] The case law on objections to magistrate judge's orders or findings is analogous to the current action.  The language of Bankruptcy Rule 9033(b) is extremely similar to that of Federal Rule of Civil Procedure 72(b), which sets out the standard for objections to a magistrate judge's orders or findings.  *See* Fed. R. Civ. P. 72(b).  The drafters of Rule 9033(b) indicated that the rule "is derived from [Rule 72(b)], which governs objections to a recommended disposition by a magistrate." *See* Fed. R. Bankr. P. 9033(b) advisory committee notes.  Other Circuits have found that due to the similarity between the two statutes, "a bankruptcy court's proposed resolution should be given the same effect as a magistrate's proposed resolution as far as an adversely affected party's responsibilities are concerned."  *In re Nantahala*, Village, Inc., 976 F.2d 876, 880 (4th Cir. 1992).

need not address them."); *In re Ionosphere Clubs, Inc.*, No. 94 CIV 0659 (MBM), 1996 WL 361531, at *1 (S.D.N.Y. June 28, 1996) (declining to review *de novo* bankruptcy court's order where *pro se* party failed to object).

The Peykars have clearly failed to meet the standards set forth in Bankruptcy Rule 9033(d) and 28 U.S.C. § 157(c). Given such, the Decision is affirmed absent any objections.

*The Proposed Findings*
*Were Not Made In Clear Error*

Even if the Designations were proper objections pursuant to Bankruptcy Rule 9033(d) and 28 U.S.C. § 157(c), the objections do not compel findings contrary to the Proposed Findings. A district court reviews the bankruptcy court's factual findings for clear error and its legal conclusions *de novo*. *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 988 (2d Cir.1 990); *In re MF Global Holdings,* No. 13 Civ 3532(AT), 2014 WL 231130, at *1 (S.D.N.Y. Jan. 22, 2014). Mixed questions of fact and law are also reviewed *de novo*. *In re Vebeliunas,* 332 F.3d 85, 90 (2d Cir. 2003).

Most of the Issues are accusations against the

20

Bankruptcy Court, creditor Nedbank, and counsel and are not relevant to the Proposed Findings.  The Issues that relate to the Proposed Findings do so in a conclusory and general matter.  The Issues that do relate to the Proposed Findings mostly raise factual issues, none of which amount to clear error.  The Defendants' objections that contain any specificity are as follows:

The Defendants contend in the Designations that the Bankruptcy Court "erred in refusing to determine . . . WHETHER Exhibit 3 was properly admitted based on one sided foundational testimony." (*See* Case No. 09-01033, ECF Nos. 116 and 117, at 2 (emphasis in original)).  Exhibit 3 was admitted "after extensive foundation testimony, at trial," supported by testimony of Doran, who was cross-examined and "was established to the satisfaction of the Court."  *In re Fine Diamonds*, 501 B.R. at 168.  The Defendants presented no evidence to challenge the specifics of Exhibit 3, but the Bankruptcy Court "nevertheless considered it necessary to gauge Doran's credibility."  *Id.*  The Decision therefore did not "refus[e] to determine" whether Exhibit 3 was properly admitted (Defendants' specific objection), and the court did properly admit the exhibit.

21

The Defendants further propose that the Bankruptcy Court "erred in refusing to determine . . . WHETHER the [Bankruptcy] Court erred in failing to consider Evidence showing that title in any alleged Transferred diamonds [sic] was with Peykar." (*See* Case No. 09-01033, ECF Nos. 116 and 117, at 3 (emphasis in original)). However, Defendants do not point to the "Evidence" the Bankruptcy Court allegedly failed to consider. The Decision also explicitly found, after an extensive review of the facts, "as a fact or mixed question of fact and law, that the diamonds given by Fine Diamonds to Peykar International beginning in 2007 were entrusted to Peykar International on consignment, and were not sold on credit." *In re Fine Diamonds*, 501 B.R. at 180. It also found that "Fine Diamonds retained title to the Transferred Diamonds when the diamonds were transferred to the Peykars on consignment." *Id.* at 183-84. Absent any evidence to the contrary, the Bankruptcy Court did not err as contended by Defendants.

The Defendants have also asked whether "the [Bankruptcy] Court erred in misstating Mehran's testimony referenced in the Answer to the Amended Summons and Complaint, to wit Mehran never admitted to a consignment arrangement between Peykar International and Fine Diamonds." (*See* Case No. 09-01033, ECF Nos. 116 and 117, at 3). However, Mehran admitted

22

in the Mehran Answer to Amended Complaint that the Debtor and
Peykar International "entered into a business relationship . . .
wherein the Debtor agreed that it would consign diamonds to
Peykar [International] for sale to third parties." *In re Fine
Diamonds*, 501 B.R. at 166 n.10.  The consignment relationship
was also established by Mitch's testimony at trial,
unequivocally admitting that the arrangement between the Debtor
and Peykar [International] was "strictly on a consignment
basis."  *Id.* at 166 n.9 ("Q. The arrangement was strictly on a
consignment basis, is that correct?  A. My understanding,
yes.").


       The Defendants propose that the Bankruptcy Court
"erred by not taking recognition that no invoices were presented
to support the transfer of any of the alleged Transferred
Diamonds which is unheard of in the industry" and "resting its
decision heavily upon a finding that a sufficient foundation was
laid to establish that computer generated Excel spreadsheets
were in fact the true business records of Fine Diamonds or less
so the records of stones supposed transferred to Peykar
[International]."  (*See* Case No. 09-01033, ECF Nos. 116 and 117,
at 3).  However, the Decision found that "[t]he specifics of the
deliveries were documented to the Court's satisfaction" by
"Plaintiff's Exhibit 1, a binder containing Microsoft Excel

23

spreadsheets . . . with respect to which foundation was satisfactorily laid to admit them as business records." *In re Fine Diamonds*, 501 B.R. at 167.  Further, the Decision extensively analyzed the Excel spreadsheets and noted "[t]he specifics of the deliveries were documented to the Court's satisfaction." *Id.* at 167.  The Defendants have provided no analysis or authority to establish that the Bankruptcy Court's conclusion was incorrect.

The Defendants also questioned whether the Bankruptcy Court "erred in naming Mehran [ ] as a defendant since he never had any form of interest in Peykar [International]." (*See* Case No. 09-01033, ECF Nos. 116 and 117, at 3).  However, the Decision explored the issue and noted that "[a]n officer or director of a corporate defendant may be liable for conversion if he or she personally fostered the conversion or was aware of the conversion and declined to set it right." *In re Fine Diamonds*, 501 B.R. at 184 (citing *Am. Feeds and Livestock Co. v. Kalfco, Inc.*, 149 A.D.2d 836, 837, 540 N.Y.S.2d 354, 356 (3d Dep't 1989)).  The Defendants have not provided any authority contrary to the Decisions' conclusion, and the authorities cited by the Bankruptcy Court are on point.  *See, e.g.*, *Kalfco*, A.D.2d 836, 837, 540 N.Y.S.2d 354, 356; *Prudential-Bache Secs. Inc. v. Golden Larch-Sequoia, Inc.*, 118 A.D.2d 487, 488, 500 N.Y.S.2d 1,

24

2 (1st Dep't 1986); *Edwards v. Horsemen's Sales Co.*, 148 Misc.2d
212, 560 N.Y.S.2d 165 (Sup. Ct. N.Y. Cnty. 1989).


      In the end, Defendants do not point to *any* evidence or
authority contradictory to the Proposed Findings or that the
Bankruptcy Court failed to contemplate.  This lack of analysis
on the Decisions' determinations applies to all of the Issues.
As such, the Bankruptcy Court's well-reasoned factual
determinations were not made in clear error, and the Decision's
legal conclusions were correct.  Given the Defendants' failure
to object with any specificity to any findings of fact or
conclusions of law, the Court adopts the Proposed Findings by
the Honorable Robert E. Gerber in the Decision in its entirety.


*The Peykars Have Waived Their Right For Appeal*


      Plaintiff contends that the failure of a defendant to
object to the proposed findings of fact or conclusions of law
also results in the waiver of that defendant to appeal the
underlying decision.  A party's failure to address a bankruptcy
court's order in its district court brief constitutes waiver of
that party's right to appeal on that issue.  *See In re Klein
Sleep Products, Inc.*, 78 F.3d 18, 29 (2d Cir. 1996) ("By failing
to press its claim . . . before the district court, [appellant]

25

Case 1:13-cv-08195-RWS Document 19 Filed 04/11/14 Page 27 of 28

did not preserve that issue for review by either the district court or this Court."); *see also In re Nantahala Village, Inc.*, 976 F.2d 876 (4th Cir. 1992) (Chapter 11 debtor, by not timely filing written objections to bankruptcy court's recommendation, waived its right to appeal district court's order adopting bankruptcy court's recommendation); *In re Ragar*, 3 F.3d 1174, 1177-78 (8th Cir. 1993) (recognizing that, where a bankruptcy court makes proposed findings of fact and conclusions of law in a non-core proceeding "[i]ts action would . . . become final and effective if [a party] [did] not file[ ] timely objections") (citing Fed. R. Bankr.P. 9033(d)). The Defendants failed to properly object to the Decision or the Proposed Findings, and their failure waives their right to appeal the findings contained herein.

**Conclusion**

Based on the conclusions set forth above, (i) the Decision is hereby affirmed in all respects; and (ii) the appeals of the Decision filed by Mitch and Mehran are hereby dismissed.  Submit judgment on notice.


It is so ordered.


New York, NY
April 10 , 2014

_____
ROBERT W. SWEET
U.S.D.J.

27